```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                  SOUTH BEND DIVISION
```

DEBORA L. SMITH, in her            )
capacity as PERSONAL               )
REPRESENTATIVE OF THE              )
ESTATE OF DONALD DECHOW,           )
                                   )
Plaintiff,                         )
                                   )
                                   )     NO.  3:13-cv-832
VS.                                )
                                   )
FRONTERA PRODUCE, LTD,             )
et al.,                            )
                                   )
Defendants.                        )

## OPINION AND ORDER

This matter is before the Court on Primus Group Inc.'s Motion to Dismiss Plaintiff's Complaint and Brief in Support (DE# 10), filed on September 17, 2013. For the reasons set forth below, this motion is **DENIED**.

BACKGROUND

Plaintiff, Debora L. Smith, brought suit against Defendants for the wrongful death of her father, Donald Dechow. Smith alleges her father contracted *Listeria monocytogenes* as a result of eating cantaloupe that was produced by Jensen Farms. Smith alleges Defendant Primus Group ("Primus") is liable in this case because Primus was in control of, and negligent in, auditing Jensen Farms

-1-

growing and packing facility shortly before the *Listeria monocytogenes* outbreak. Primus has filed the instant motion to dismiss, arguing that Smith has not adequately pleaded a negligence claim against it.[1]

DISCUSSION

Facts

The following facts are based on the allegations contained in the complaint, which this Court must take as true at this stage in the litigation. Plaintiff, Deborah Smith, is the daughter of Donald Dechow, deceased, and she is also the court-appointed personal representative of the Estate of Donald Dechow. (Cmplt ¶ 1). Defendant, Primus Group, Inc. d/b/a "Primus Labs" ("Primus") was a company that provided auditing services for businesses involved in the manufacture and sale of food products. (Cmplt ¶ 4). Primus retained the services of subcontractors for some of its auditing, including the audit of Jensen Farms, the manufacturer, distributor and seller of the cantaloupe at issue in this case. (Cmplt ¶ 4).

On September 2, 2011, the Colorado Department of Public Health

---

[1] The motion also sought dismissal of what Primus characterized as a loss of consortium claim. (DE# 10, p. 21). However, in her response, Plaintiff clarified that she was not making a loss of consortium claim, but was instead seeking damages for loss of companionship under Ind. Code section 34-23-1-2. Primus did not reply to Plaintiff's clarification. So this Court assumes there is no dispute at this time regarding the viability of Plaintiff seeking damages for loss of companionship.

and Environment ("CDPHE") began investigating an outbreak of *Listeriosis* infections in Colorado. (Cmplt ¶ 8). CDPHE announced that the source of the outbreak was contaminated cantaloupes grown by Jensen Farms. (Cmplt ¶ 11). The Food and Drug Administration ("FDA") conducted an on-site investigation of the Jensen Farms facility and collected a total of nine positive samples *of Listeria monocytogenes* from various locations throughout the facility. (Cmplt ¶ 13).

Prior to the *listeria* outbreak, Jensen Farms or Frontera, contracted with Primus to conduct an audit of Jensen Farms' facilities, including their growing areas and packing house. (Cmplt ¶ 14). Primus entered into an agreement to ensure that the facilities, premises and procedures used by Jensen Farms in the production of cantaloupes met or exceeded applicable standards of care. (Cmplt ¶ 15). It was the intent of these contracting parties to ensure that the food products Jensen Farms produced, and that Frontera distributed, would be of high quality for consumers, and would not be contaminated by potentially lethal pathogens, such as *Listeria monocytogenes*. (Cmplt ¶ 16). Frontera represented to the public and retail sellers that its cantaloupes were "Primus Certified," to induce retailers to buy their cantaloupes and induce the public to purchase their cantaloupes. (Cmplt ¶¶ 17, 18).

Primus selected and hired Bio Food Safety, Inc. to conduct the audit of Jensen Farms. (Cmplt ¶ 19). Primus and Bio Food Safety

held themselves out as experts in the field of food safety. (Cmplt ¶ 20). By auditing companies involved in the production and distribution of food products, Primus and Bio Food Safety intended to aid these companies in ensuring that the food produced was of high quality, fit for human consumption, and not contaminated by any potentially dangerous pathogens. (Cmplt ¶ 21). Bio Food Safety auditor James DiIorio conducted an audit at Jensen Farms' ranchlands and packing facility around July 25, 2011, approximately one week before the CDC identified the first victim of the cantaloupe *Listeria* outbreak had consumed the contaminated cantaloupe. (Cmplt ¶ 22). Mr. DiIorio gave the Jensen Farms packing house a "superior" rating, and a score of 96%. (Cmplt ¶ 22).

After learning of the source of the nationwide cantaloupe outbreak, and positive environmental test for *Listeria monocytogenes* from the FDA, an environmental assessment was ordered for Jensen Farms. (Cmplt ¶ 24). Findings from this assessment, which were memorialized in the FDA's October 19, 2011, report, included many deficiencies at Jensen Farms. (Cmplt ¶ 24). FDA officials cited multiple failures at Jensen Farms which "reflected a general lack of awareness of food safety principles." (Cmplt ¶ 25).

Mr. DiIorio's prior audit found many aspects of Jensen Farms' facility, equipment and procedures- that the FDA heavily

criticized- to be in "total compliance." (Cmplt ¶ 26). Many of the substandard conditions and practices cited by the FDA should have caused Jensen Farms to receive a score that would have caused its packing house to fail Dilorio's audit. (Cmplt ¶ 28). Mr. Dilorio misrepresented the conditions and practices at Jensen Farms' packing house by giving it a "superior" rating and a score of 96%, despite the existence of conditions and practices that should have caused him to fail the facility. (Cmplt ¶ 29). Mr. Dilorio made other misrepresentations, including statements about the suitability of equipment in place at the packing house for the processing of cantaloupes - all of which were relied on by Jensen Farms as justification for continuing to use the conditions, practices or equipment for its processing of cantaloupes. (Cmplt ¶ 29).

At the time of the July 25, 2011, audit, Jensen Farms should not have passed, and should not have been approved for the manufacture and sale of cantaloupe. (Cmplt ¶ 30). The cantaloupe that caused Mr. Dechow's *Listeriosis* death would have not been distributed by Jensen Farms and Frontera in the dangerous condition they were if Jensen Farms had not passed the audit. (Cmplt ¶ 30).

Plaintiff has brought a negligence claim against Primus[2], alleging Mr. Dilorio was negligent in performing the July 25, 2011,

---

[2] The complaint alleges Bio Food Safety was an agent of Primus for purposes of Mr. Dilorio's audit of Jensen Farms on July 25, 2011. Thus, Plaintiff brings suit against Primus.

audit.

Standard of Review

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)(quotation marks, ellipsis, citations, and footnote omitted).

> While, for most types of cases, the Federal rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he based his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegations in the complaint, it is hard to see how a claimant could satisfy the requirement of providing to only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id*. at n. 3 (citation omitted).

### The complaint states a claim for negligence.

To state a claim for negligence, a complaint must contain allegations sufficient to establish: "(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 243 (Ind. Ct. App. 2014)(citation omitted). Primus argues that the complaint fails to allege that Primus had any duty toward the decedent; the complaint fails to establish a breach of any duty; and, the complaint does not support any causation between the audit and the decedent's injuries. Each of these arguments will be addressed in turn.

### The complaint alleges Primus had a duty towards the decedent.

Primus argues that it owed no duty towards the decedent because Primus was not in privity with the decedent. In so

arguing, Primus acknowledges that Indiana is silent on the exact issue here. Nevertheless, Primus relies on Justice Cardozo's oft-cited opinion in *Ultramares*, which discussed the rationale behind the privity rule, a rule that held privity was required to impose a legal duty. *Ultramares Corp. v. Touche*, 174 N.E.2d 441, 444 (N.Y. 1931). Plaintiff admits this is no privity here. However, that is not the end of the inquiry. While privity was historically required to impose a legal duty, the law has evolved and in Indiana "it is well-established that privity is not always required." *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

One such bypass to the strict privity rule is assumption of duty. Hermann v. Frey, 537 N.E.2d 529, 531 n.3 (Ind. Ct. App. 1989). A duty of care may arise where one party assumes such a duty. *Yost v. Wabash Coll.*, 3N.E.3d 509 (Ind. 2014). The assumption of duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Id.* Plaintiff claims Primus assumed a duty towards the decedent based on the application of Section 324A of the Restatement (Second) of Torts. Section 324A parallels Indiana's doctrine of assumed duty. *Ward v. First Indiana Plaza joint Venture*, 725 N.E.2d 134, 136 (Ind. Ct. App. 2000). Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for

>     physical harm resulting from his failure to exercise
>     reasonable care to protect his undertaking, if
>
>     (a) his failure to exercise reasonable care increases
>         the risk of such harm, or
>
>     (b) he has undertaken to perform a duty owed by the
>         other to the third person, or
>
>     (c) the harm is suffered because of the reliance of the
>         other or the third person upon the undertaking.

*Id.*

"The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Medtronic, Inc. v. Malander*, 996 N.E.2d 412, 420 (Ind. Ct. App. 2013)(quoting *Plain-Tec, Inc. v. Wiggins,* 443 N.E.2d 1212, 1219 (Ind. Ct. App. 1983)). "The existence and extent of such a duty are ordinarily questions for the trier of fact." *Id.* (quoting *Merrill v. Knauf Fiber Glass Glass GmbH*, 771 N.E.2d 1258, 1270 (Ind. Ct. App. 2002). But, if the record contains insufficient evidence to establish such a duty, the court can decide the issue as a matter of law. *Id.*

Neither party has directed this Court's attention to an Indiana case with similar facts to those before it. However, upon review of Section 324A of the Restatement (Second) of Torts in conjunction with the allegations of the complaint, this Court finds these allegations are sufficient to plead that Primus assumed a duty to Donald Dechow, a consumer injured by contaminated cantaloupes produced by Jensen Farms. Indeed, the complaint

alleges Primus undertook an audit of Jensen Farms' facilities to ensure that the facilities, premises and procedures used by Jensen Farms in the production of cantaloupes met or exceeded applicable standards of care. The purpose of this contract was to ensure that the food products Jensen Farms produced, and that Frontera distributed, would be of high quality for consumers, and would not be contaminated. The public and retail sellers were informed that the cantaloupes were "Primus Certified," to induce retailers to buy their cantaloupes and induce the public to purchase their cantaloupes. Primus held itself out as an expert in the field of food safety and, by auditing Jensen Farms, Primus intended to aid Jensen Farms in ensuring that the food produced was of high quality, fit for human consumption, and not contaminated by any potentially dangerous pathogens. Despite this, Primus failed to conduct the audit using reasonable care, which resulted in Donald Dechow consuming Jensen Farms cantaloupe, becoming sick with *Listeria monocytogenes* and ultimately dying from this illness.

This conclusion should come as little surprise. The parties admit that parallel litigation is pending against Primus in numerous courts throughout the country based on the July 2011 outbreak of *Listeriosis* allegedly tied to contaminated cantaloupe from Jensen Farms. Plaintiff has pointed out that a clear majority of the courts that have applied section 324A of the Restatement of Torts (Second), have denied Primus' identical motions to dismiss

filed throughout the country. (DE# 48, Ex. A, p. 9, n.2)(citing *Underwood v. Jensen Farms*, 6:11-CV-348 (E.D. Okla. March 10, 2014); *Braddock v. Primus*, 8:13-CV-258 (D. Neb. February 5, 2014); *Robertson v. Frontera Produce*, CIV-11-1321 (W.D. Okla. January 24, 2014)).

Primus argues that this Court should follow the United States District Court for the District of Wyoming's decision in *Corsi*, which found that Primus owed no duty of care to the plaintiff. *Corsi v. Jensen Farm*, No. 2:12-CV-52 (D. Wyo. Oct. 11, 2013). Notably absent from that order, however, was any mention of Section 324A. Since the court in *Corsi* did not examine Section 324A - the basis this Court used to find an assumed duty based on the allegations - there is little value in *Corsi's* conclusion finding that Primus did not owe the plaintiff a duty.

When determining whether a duty is present, the court is mindful that public policy must be addressed. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991). Primus argues that public policy weighs against finding a duty because "the allegations set forth in the Complaint do not remotely support that Primus undertook a duty to the decedent or to the public in general." (DE# 10, p. 16). However, this Court has found that Primus did assume this duty. And, because of these allegations, public policy would not weigh against imposing one at this stage.

### Complaint adequately alleges Primus breached its duty.

Primus argues that, even if a duty to the decedent has been alleged, the complaint fails to allege any facts constituting a breach of that duty. Primus takes issue with the fact that the complaint does not specifically state what DiIorio was required to inspect during the audit, does not establish the reasonable standard of care of a third party auditor conducting a packinghouse audit, and fails to conclude that DiIorio's purported failure to identify certain conditions and practices fell below that standard of care. However, Primus fails to cite to any rule of law that requires a complaint to contain such specifics surrounding the standard of care.

"Federal courts focus on the pleading of claims, not the pleading of facts." *Hutchinson v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). Thus, while it is true that the complaint does not plead the auditor's required standard of care or the specifics surrounding how that standard was allegedly not complied with, the complaint is not required to contain that information. *Eads v. Community Hosp.*, 932 N.E.2d 1239, 1245 (Ind. 2010)(in Indiana, while a standard of care may ultimately have to be proven, it is not necessarily a pleading requirement). Plaintiff may be required to ultimately establish the requisite standard of care and provide evidence that it was not complied with, but that is an inquiry left for another day. What is important here is whether Plaintiff has

plead a breach under the liberal notice pleading requirements. *Dausch v. Ryske*, 52 F.3d 1425, 1430 (7th Cir. 1994)("Thus, although the complainant must show that she is entitled to relief, she need not set out in detail the facts upon which her claim is based.")(citation omitted).

In reviewing the allegations of the complaint, it is clear that Primus undertook the responsibility to "ensure that the facilities, premises and procedures used by Jensen Farms in the production of cantaloupes met or exceeded applicable standards of care related to the production of cantaloupe, including, but no limited to, good agricultural and manufacturing practices, industry standards, and relevant FDA industry guidance." (Cmpt. ¶ 15). Furthermore, Primus was an expert in the field of food safety. (Cmpt. ¶ 20). Despite this, Primus' auditor "failed to observe, or properly demerit or consider, multiple conditions or practices that were in violation of Primus's audit standards applicable to cantaloupe packing houses, industry standards, and applicable FDA industry guidance." (Cmpt. ¶ 23). These allegations are sufficient to plead a breach of duty.

### The complaint sufficiently alleges causation.

Primus also argues that the complaint fails to properly allege the element of causation. Causation, both actual and proximate, is an essential element of a negligence claim and the burden of proof

which Plaintiff carries.  *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994).  "Proximate cause involves two inquiries: (1) whether the injury would not have occurred but for the defendant's negligence; and (2) whether the plaintiff's injury was reasonably foreseeable as the natural and probable consequence of the act or omission."  *Laycock v. Sliwkowski*, 12 N.E.3d 986, 991 (Ind. Ct. App. 2014).  Generally, proximate cause is a question of fact for the jury.  *Adams Twp. of Hamilton County v. Strudevant*, 570 N.E.2d 87, 90 (Ind. Ct. App. 1991).  However, when "only a single conclusion can be drawn, it is a question of law to be determined by the court.  *Id.*

The complaint alleges that the July 25, 2011, audit should have not passed Jensen Farms and that Jensen Farms should not have been approved to manufacture or sell cantaloupe.  And, "[t]he cantaloupe that caused Mr. Dechow's *Listeriosis* death would not have been distributed by Jensen Farms and Frontera in the dangerous condition they were in if Jensen Farms had not passed the audit." (Cmpt. ¶ 30).  This is sufficient to meet the "but for" prong of the proximate cause analysis.

Regarding the foreseeability prong, Primus argues that the complaint fails to allege how its actions created a foreseeable danger for a Listeria outbreak or how it could have foreseen such a result from the audit.  The proper inquiry here is "whether the person actually harmed was a foreseeable victim and whether the

type actually inflicted was reasonably foreseeable." *Webb*, 575 N.E.2d at 997. This "does not mean that the precise hazard or exact consequences should have been foreseen, but neither does it encompass anything which might occur." *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 244 (Ind. Ct. App. 2014)(citation omitted). This determination is based on the totality of the circumstances, and is ordinarily a question of fact for the jury to decide. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 7 (Ind. 2010).

According to the complaint, Primus conducted the audit to ensure the cantaloupes "would be of high quality for consumers, and would not be contaminated by potentially lethal pathogens such as *Listeria monocytogenes*. (Cmplt ¶ 16). The complaint further alleges the decedent was a consumer who ate cantaloupe contaminated with *Listeria monocytogenes* - cantaloupe that would not have been distributed but for the negligent audit. Based on these allegations, this Court finds that the type of harm and the person harmed in this case could both be categorized as foreseeable consequences of a negligent audit of Jensen Farms.

CONCLUSION

For the reasons set forth above, this motion is **DENIED**.

**DATED: September 11, 2014**          /s/RUDY LOZANO, Judge
                                       **United States District Court**